IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00116-NRN

UNITED STATES OF AMERICA,

Plaintiff,

v.

MOHAMMED WALI ZAZI,

Defendant.

---

## MEMORANDUM AND ORDER ON
## PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. #29)

---

This is an action to revoke United States citizenship pursuant to 8 U.S.C. § 1451(a). This matter comes before the Court on Plaintiff United States of America's ("Government" or "United States") Motion for Judgment on the Pleadings (Dkt. #29). The Court has reviewed the Motion, Defendant Mohammed Wali Zazi's ("Mr. Zazi") Opposition (Dkt. #31), and Plaintiff's Reply in Support (Dkt. #34). In addition, on September 25, 2018, the Court heard extensive oral argument on the Motion.[1] Pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 40.1(c), the Parties have voluntarily consented to the exercise of a United States Magistrate Judge for all purposes in this case (Dkt. #11). For the reasons set forth below, the Court GRANTS the Government's Motion.

---

[1] The Court would like to thank counsel for both parties for their excellent briefing and oral argument on the issues addressed herein, and to express appreciation to pro bono defense counsel for representing Mr. Zazi.

# I.    Background

The United States brought this action seeking to revoke the citizenship of Mr. Zazi. Mr. Zazi is a naturalized American citizen, originally from Afghanistan. According to the Government's Complaint, prior to naturalizing, Mr. Zazi committed multiple acts that rendered him ineligible for naturalization pursuant to 8 U.S.C. § 1427(a)(3), which requires a person seeking to obtain United States citizenship to show good moral character during the requisite five-year period preceding application for naturalization through the time of admission to citizenship.

Specifically, the Government alleges Mr. Zazi failed to comply with this statutory prerequisite for naturalization, rendering his certificate of naturalization "illegally procured," because he provided false statements and testimony on immigration benefits applications submitted to the United States and at interviews in support of these applications. The United States also asserts that Mr. Zazi committed crimes for which he had not been arrested or convicted at the time he provided representations and testimony in support of his citizenship application. According to the Government, each of these acts rendered Mr. Zazi ineligible to naturalize under 8 U.S.C. § 1427(a)(3). The United States thus brings this action, pursuant to 8 U.S.C. §1451(a), to revoke and set aside the order admitting Mr. Zazi to citizenship, and to cancel his Certificate of Naturalization, No. 29824582.

## A.  Legal basis for revocation of citizenship.

8 U.S.C. §1451(a) imposes a duty on the United States Attorney for the District of Colorado, upon affidavit showing good cause, to institute proceedings for the purpose of revoking or setting aside the order admitting a person to citizenship and cancelling the certificate of naturalization. Grounds for revocation and cancellation include that the

order admitting the person to citizenship and certificate of naturalization "were illegally procured or were procured by concealment of a material fact or willful misrepresentation". 8 U.S.C. §1451(a). Naturalization is illegally procured if an applicant does not meet any one of the qongressionally imposed requirements for citizenship . *Fedorenko v. United States,* 449 U.S. 490, 506 (1981); 8 U.S.C. § 1427 (entitled "Requirements of naturalization," and which includes the requirement, under section 1427(a)(3), that "during all the periods referred to in this subsection [the applicant] has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.").

Courts universally recognize that "[t]he naturalization process, of course, rests on the assumption that accurate and truthful information is presented by those seeking to become citizens of the United States." *United States v. Ciurinskas,* 148 F.3d 729, 732 (7th Cir. 1998). Accordingly, "[w]hen naturalization is won by deceit, and material falsehoods are unmasked, the gift of naturalization may be revoked." *Id.*

Once U.S. citizenship has been conferred, revocation of that citizenship under 8 *U.S.C.* § 1451(a) requires clear, unequivocal, and convincing proof. *Schneiderman v. United States,* 320 U.S. 118, 122 (1943). The Government bears the burden of such proof in denaturalization proceedings because of the "importance of the right that is at stake." *Fedorenko,* 449 U.S. at 505-06. But, once a district court determines "that the Government has met its burden of proving that a naturalized citizen has obtained his citizenship illegally or by willful misrepresentation, it has no discretion to excuse the conduct," and must "enter[] a judgment of denaturalization." *Id.* at 517.

## B. Undisputed Facts

The following facts, alleged in the Complaint and/or the Government's Motion

(0kt. #29), or derived from documents of which I may take judicial notice, are not

disputed by Mr. Zazi[2]:

1. Mr. Zazi originally was a native and citizen of Afghanistan (0kt. #20 at 2116).

2. Mr. Zazi filed an application for naturalization ("N-400") on or about June 25, 2006, with the Eastern Service Center of Citizenship and Immigration Services ("CIS"), an agency within the Department of Homeland Security ("OHS") (0kt. #1-6 at 11; Dkt. 1-1 11l11).

3. Mr. Zazi was interviewed by an Adjudications Officer of CIS on May 1, 2007, to determine his eligibility for naturalization *(id.)*.

4. Mr. Zazi's application was approved on October 2, 2007, based on his written application and his testimony at the naturalization interview (0kt. #1-6 at 1).

5. Mr. Zazi became a U.S. citizen on October 23, 2007, and was issued Certificate of Naturalization, No. 29824582 (0kt. #1-111111; 0kt. #1-71113).

6. As an applicant for naturalization, Mr. Zazi was required to prove that he was, and continued to be, a person of "good moral character" from July 1, 2001, five years before he filed his application for naturalization, until he took the oath of allegiance on October 23, 2007.[3]

7. On July 15, 2011, a federal grand jury returned a one-count indictment charging Mr. Zazi with visa fraud in connection with the procurement of a visa for his nephew, in violation of 18 U.S.C. § 1546(a) (0kt. #1-2 at 2-6). The grand jury based its charge on Mr. Zazi's submission of a Form 1-130 Petition for Alien Relative on behalf of his nephew, Amanullah Zazi (0kt. #1-7). In the Form 1-130 , Mr. Zazi falsely represented that his nephew was, in fact, his biological son *(id.* Part A. 1). He also specifically represented that his nephew was not his adopted son *(id.* Part A. 2).

---

[2] In his Response to the Government's Motion, Mr. Zazi states he "has only one dispute with the government's concise statement of the relevant facts pertinent to its Motion," which is that there was a "specific oral question and answer exchange [] at his May 1, 2007, naturalization interview" (0kt. #31 at 1-2).

[3] *See* 18 U.S.C. § 1427(a), 8 C.F.R. § 316.10(a).

8. On February 10, 2012, a judgment in the United States District Court for the Eastern District of New York was rendered against Mr. Zazi, upon his plea of guilty, for committing the offense of visa fraud, in violation of 18 U.S.C. § 1546(a) (0kt. #1-2 at24-25).

9. Count One, paragraphs 8-11 of the indictmentto which Mr. Zazi pied guilty (Dkt. #1-2 at 4-5), alleges that in late December 2006/early January 2007, Mr. Zazi submitted a Form 1-130 Petition for Alien Relative (Dkt. #1-7) knowing the petition falsely represented that his nephew was his biological son, and specifically stated his nephew was not related to him by adoption.

1a. According to the indictment, Mr. Zazi previously had caused to be filed a Refugee/Asylee Relative Petition on behalf of his nephew that also falsely represented his nephew was his biological son (0kt. #1-2 at 2), and that he also caused his attorney to file two affidavits in support of the Refugee/Asylee Relative Petition, in which two affiants attested they were friends of Mr. Zazi, and they had personal knowledge that Mr. Zazi's nephew was his biological son because they were present at his birth *(id.* at 2-3).

11. In pleading to the one-count indictment for visa fraud, Mr. Zazi admitted that, between 2006 and 2007, he submitted a Form 1-300 Petition for his nephew, Amanullah Zazi, to come to the United States (0kt. #1-2 at 20).

12. The colloquy between Mr. Zazi and the judge who accepted his guilty plea is as follows:

> The Court: Tell me, briefly, what you did that makes you guilty.
>
> The Defendant: Between 2006 and 2007, Amanullah, who as my nephew, he resided in Pakistan. I made an application for him to come to the United States. Amanullah was not my biological son and I told my attorney to mark it as my real son.
>
> The Court: "Mark it," meaning the 1-1 30 petit io n ?
>
> The Defendant: I do not know the number of the application.

The Court: Am I correct in understanding that you instructed your attorney to falsely tell the Immigration authorities that Amanullah was your biological son?

The Defendant: Yes.

The Court: This seems obvious but we may as well make it explicit. You knew at the time that he wasn't your biological son, correct?

The Defendant: Yes. I knew that he was not my biological son.

The Court: I think that does it.

The Defendant: He was my nephew.

Transcript of Plea before the Hon. John Gleeson, United States District Judge, E.D.N.Y. October 21, 2011, *United States v. Mohammed Zazi,* No. 11-cr-00718-JG (Dkt. #1-2 at 19-20).

13. Mr. Zazi made false statements to the Government in order to obtain an immigration benefit for his nephew, Amanullah Zazi.

14. Mr. Zazi committed the acts constituting this crime in or around December 2006 and January 2007, during the statutory period where he was required to demonstrate "good moral character" in connection with his application for naturalization, i.e., between July 1, 2001 and October 23, 2007.

15. On May 1, 2007, Mr. Zazi appeared before Adjudications Officer Florentina Preda for an interview regarding his application for naturalization (Dkt. #1-111111).

16. At the beginning of the naturalization interview, Mr. Zazi took an oath or affirmed he would answer all questions truthfully. At the end of his naturalization interview on May 1, 2007, Mr. Zazi signed his N-400 in the presence of Officer Preda, thereby swearing that everything in his application was true (Dkt. #1-6 at 11 Part 13).

17. On his N-400 form, Part 9.B., Mr. Zazi falsely listed his nephew, Amanullah, as his son (Dkt. #1-6 at 7).

18. In response to question 15 of Part 10.0 . (entitled "Good Moral Character") on his N-400 form, regarding his criminal history, Mr. Zazi indicated that he had never committed any crime for which he had not been arrested (0kt. #1-6 at 9).

19. In response to question 22.e. of Part 10.D. on his N-400 form, asking whether he had **"ever[]** [h]elped anyone enter or try to enter the United States illegally," Mr. Zazi responded "No" (0kt. #1-6 at 9) (emphasis in original).

20. In response to question 23 of Part 10.0 . on his N-400 form, asking whether he had **"ever** given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion or removal," Mr. Zazi responded "No" (0kt. #1-6 at 9) (emphasis in original).

21. Mr. Zazi's responses, and the information he provided in relation to Part 9.8, and Part 10.D questions 15, 22.e., and 23, on his N-400, were false.

22. Three handwritten corrections were made to Mr. Zazi's N-400 form-but none to part 9.8, or Part 10.D. questions 15, 22.e., or 23 (0kt. 1-6, at 7, 8, and 10).

23. Mr. Zazi certified under penalty of perjury that the contents of and representations made in his N-400 form were true and correct by signing the following statement, set forth in Part 13:

> I swear (affirm) and certify under penalty of perjury under the laws of the United States of America that I know that the contents of this application for naturalization subscribed by me, including corrections numbered 1 through 3 and the evidence submitted by me numbered pages 1 through 10, are true and correct to the best of my knowledge and belief (0kt. 1-6 at 11).

24. Mr. Zazi signed his N-400 form in the presence of Officer Predo, who attested that Mr. Zazi had subscribed and sworn to (or affirmed) the above statement (id).

25. Mr. Zazi committed the fraudulent acts of which he was later convicted prior to the time that he filed his N-400 form, prior to his appearance for his naturalization interview, and during the statutory period where he was required to demonstrate "good moral character" in connection with his application for naturalization.

26. On October 23, 2007, Mr. Zazi appeared for the oath ceremony to complete the naturalization process (0kt. #1-1 ,l 9). In support of his application for naturalization, he submitted CIS Form N-445 (id). The N-445 specifically asks whether, "AFTER THE DATE you were first interviewed on your application for naturalization, Form N-400 . . . Have you knowingly committed any crime or

offense for which you have not been arrested; or have you been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violation." Mr. Zazi answered "no" to this question.

27. On February 22, 2010, Mr. Zazi's actual biological son, Najibullah Zazi, pied guilty to charges of conspiracy to use weapons of mass destruction, conspiracy to commit murder in a foreign country, and providing material support to a terrorist organization. *See United States v. Najibul/ah Zazi,* No. 1:09-cr-0063, Dkt. #30 (E.D.N.Y. Feb. 22, 2010).

28. On July 22, 2011, a jury convicted Mr. Zazi of obstructing justice and conspiracy to obstruct justice for destroying evidence and lying to investigators concerning the investigation of his son, Najibullah Zazi, in relation to his son's plan to use weapons of mass destruction.[4] *See United States v. Mohamed Zazi,* No. 1:10-cr-00060, Dkt. #169 (E.D.N.Y. July 22, 2011).

29. According to the indictment charging Mr. Zazi, he "did knowingly and intentionally conspire to corruptly alter, destroy, mutilate and conceal objects, to wit glasses, masks, liquid chemicals and containers."

   **C. The One Factual Allegation challenged by Mr. Zazi.**

Mr. Zazi, in his Opposition (Dkt. #31), disputes only one factual assertion made by the Government. Specifically, Mr. Zazi takes issue with the Government's assertion that at Mr. Zazi's naturalization interview, "the USCIS interviewing Officer asked [Mr. Zazi] Question 15 on Part 10.D. In response, Defendant confirmed his written response that he had never committed a crime or offense for which he was not arrested" (Dkt. #31 at 1-2). Mr. Zazi disputes that the Government has established that this specific oral question and answer exchange occurred at the naturalization interview, pointing out that the only document which states that this question was asked orally is an affidavit by special Agent John Fiordalis (Dkt. #1-1, �III V.A.3-4), who was not present at the interview conducted by Adjudicating Officer Florentina Preda. Thus, per Mr. Zazi, there

_____

[4] Mr. Zazi's 2011 conviction is not a basis for revocation under 8 U.S.C. § 1451(a), as it falls outside the statutory good moral character period.

is no admissible evidence in the record from which the Court could appropriately conclude that Question 15 was asked or answered in the manner articulated in Fiordalis' affidavit. The Government cites to cases recognizing a standard practice on the part of immigration officers to annotate the naturalization application during interviews with check marks next to questions that were orally verified with the applicant. But what may have been established in other cases, has not yet been established in this case, especially without an affidavit of someone with personal knowledge of the specific procedures used by Mr. Zazi's interviewer.

The Court agrees that this alleged fact is disputed, and does not rely on it in making its decision in this case.

### D. The Government's Specific Arguments for Revocation and Cancellation

The Government argues Mr. Zazi was ineligible to naturalize, and therefore his citizenship must be revoked, because during the relevant statutory good cause period he: (1) committed a crime involving moral turpitude ("CIMT") *(see* Dkt. #1, Count Two); (2) committed an unlawful act reflecting on his moral character *(id.,* Count Three); and (3) misrepresented and concealed material facts concerning his criminal conduct during the naturalization process *(id.,* Count Four).[5] According to the Government, any one of these grounds, standing alone, is a sufficient basis to revoke Mr. Zazi's citizenship.

### II. Judgment on the Pleadings Standard

After the pleadings are closed, a party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). When a plaintiff moves for judgment on the

---

[5] Count One of the Government's Complaint alleges Mr. Zazi illegally procured his citizenship because he was statutorily precluded from establishing the requisite good moral character due to his false testimony under 8 U.S.C. § 1101(f)(6). The Government's motion does not seek judgment with respect to Count One.

pleadings, the court should accept as true all factual allegations in the answer and all factual allegations from the complaint that the defendant admits or fails to deny. *See Landmark Am. Ins.* Co. *v. VO Remarketing Corp.,* No. 13-cv-1386, 2014 WL 2673593, at \*2 (D. Colo. June 13, 2014), aff'd, 619 F. App'x 705 (10th Cir. 2015) (granting plaintiff's motion for judgment on the pleadings after finding no material issue in dispute as to the issues raised in plaintiff's motion, and in light of the complaint and answer). The court must draw any inferences taken from the pleadings in the light most favorable to the nonmoving party. *Ramirez v. Dep't of Corr.,* 222 F.3d 1238, 1240 (10th Cir. 2000) (accepting the "well-pleaded allegations of the complaint as true and constru[ing] them in the light most favorable to the plaintiff' where defendant moved for judgment on the pleadings).

As a general rule, in considering a motion for judgment on the pleadings, a court must either limit its review to the pleadings or, in considering other documents, convert the motion to one seeking summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under ... 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment."). Documents attached to the pleadings, however, are subject to full consideration in a court's review of a Rule 12(c) motion. *Park Univ. Enterprises, Inc. v. Am. Gas.* Co. *of Reading, PA,* 442 F.3d 1239, 1244 (10th Cir. 2006) ("As with our practice for motions to dismiss under Rule 12(b)(6), documents attached to the pleadings are exhibits and are to be considered in our review of the district court's grant of Park University's Rule 12(c) motion.").

Moreover, a district court may consider facts subject to judicial notice such as matters of public record without converting a Rule 12(c) motion into a summary

judgment motion. *United States v. Ahidley,* 486 F.3d 1184, 1192 n.5 (1oth Cir. 2007) (a

court "may exercise [its] discretion to take judicial notice of publicly-filed records . . .

concerning matters that bear directly upon the disposition of the case at hand"); *Van*

*Woudenberg v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2000) ("[T]he court is permitted to

take judicial notice of its own files and records, as well as facts which are a matter of

public record."), *abrogated on other grounds by McGregor v. Gibson,* 248 F.3d 946, 955

(10th Cir. 2001).

## III. Analysis

### A. Mr. Zazi was Ineligible for Naturalization Because He Committed a CIMT During the Statutory "Good Moral Character" Period - Count Two

The Government argues the pleadings and federal district court criminal records

attached to the Complaint establish that Mr. Zazi pleaded guilty to and was convicted of

visa fraud, and that Mr. Zazi's actions underlying the plea occurred during the statutory

"good moral character" period. The Government asserts the crime of which Mr. Zazi

was convicted, visa fraud under 18 U.S.C. § 1546(a), was a CIMT, and thus applicable

law precluded Mr. Zazi from establishing the good moral character required to lawfully

naturalize as a United States citizen.

The Immigration and Nationality Act ("INA") requires a naturalization applicant to

establish that "during all periods referred to in this subsection [the applicant] has been

and still is a person of good moral character." 8 U.S.C. § 1427(a)(3). The period in

which Mr. Zazi was required to show good moral character began five years before the

date he filed his naturalization application, and continued until the time he took the oath

of allegiance as a naturalized United States citizen. *Id.;* 8 C.F.R. § 316.10(a)(1).

Therefore, by statute and regulation, Mr. Zazi had to show good moral character from

July 1, 2001 to October 23, 2007 in order to be eligible for naturalization. See Complaint ,I37 (admitted by Mr. Zazi in his answer, 0kt. #20 il 37).

The INA precludes a naturalization applicant from establishing good moral character if he falls within certain enumerated classes. 8 U.S.C. § 1101(f)(1)-(9).[6] As relevant to Mr. Zazi, an applicant statutorily lacks good moral character if he commits a CIMT during the statutory period, and later is either convicted of the CIMT, or admits to its commission. See 8 U.S.C. § 1101(f)(3) (cross referencing 8 U.S.C. § 1182(a)(2)(A)7); see also 8 C.F.R. § 316.10(b)(2)(i)[8]. The CIMT bar applies so long as the conduct occurred during the period, whether or not the conviction (or admission) occurred during the period or not. See United States v. Suarez, 664 F.3d 655, 659-60 (7th Cir. 2011) (noting that proof of the offense need not occur during the statutory period).

---

[6] At first blush, it appears 8 U.S.C. § 1101(f)(6) might also apply, as it precludes a finding of good moral character for "one who has given false testimony for the purpose of obtaining any benefits under this chapter." But case law addressing this section confirms that false "'testimony' is limited to oral statements made under oath," and therefore "does not include 'other types of misrepresentation or concealments, such as falsified documents or statements not made under oath."' Kungys v. U.S., 485 U.S. 759, 780 (1988). Although the Government alleges that during his naturalization interview, "Mr. Zazi falsely testified, under oath, that he had not committed a crime for which he had not been arrested" (0kt. #1-1 il4), and Count One of its Complaint seeks denaturalization based on 8 U.S.C. § 1101(f)(6), Mr. Zazi disputes he made this oral representation during this interview (0kt. #31 at 2), thus precluding any ruling on Count One at this stage of the proceedings.

[7] 8 U.S.C. § 1182 is entitled "Inadmissible aliens," and section (a)(2)(A) of this statute addresses "[c]riminal and related grounds," and the "[c]onviction of certain crimes," which specifically include "a crime involving moral turpitude ... or an attempt or conspiracy to commit such a crime." 8 U.S.C. § 1182(a)(2)(A)(i)(I).

[8] 8 C.F.R. § 316.10 is entitled "Good moral character," and section (b)(2)(i) of this regulation states, in pertinent part, that "[a]n applicant shall be found to lack good moral character if during the statutory period the applicant (i) [c]ommitted one of more crimes involving moral turpitude . . . for which the applicant was convicted."

The Government argues that under 8 U.S.C. § 1101(f)(3) and its associated caselaw, Mr. Zazi could not have demonstrated the requisite good moral character because (1) he committed a CIMT; (2) during the statutory period; and (3) was convicted of, and admits committing, that CIMT. The Government argues that given the nature of Mr. Zazi's section 1546(a) conviction-knowingly providing false information on a visa petition for the purpose of presenting that information to USCIS in order to obtain a benefit under the Government's immigration laws-his crime qualifies as a CIMT because it is wholly fraudulent, and therefore warrants revocation.[9]

Mr. Zazi, by contrast, disputes whether the crime to which he pled guilty (visa fraud in violation of 18 U.S.C. § 1546(a)) is a CIMT. Mr. Zazi expressly concedes, however, "that the conduct which ultimately led to his guilty plea under 18 U.S.C. § 1546(a) was during the relevant statutory period *and* that if the conviction were a CIMT, he would have been ineligible for citizenship at the time of his naturalization" (0kt. #31 at 6) (emphasis added). He further argues that "longstanding Board of Immigration Appeals precedent holds that a conviction under 18 U.S.C. § 1546(a) is not categorically a CIMT" *(id.* at 8 citing *Matter of Serna,* 20 I & N. Dec. 579 (BIA 1992)), and that in making its decision as to whether or not Mr. Zazi was convicted (or admitted to committing) a CIMT, this Court may "only look outside the four corners of 18 U.S.C. §

---

[9] Had "the term of imprisonment" for Mr. Zazi's violation of section 1546(a) "been at least six months," this offense would have qualified as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(P), and thus precluded him from being found a person of good moral character pursuant to 8 U.S.C. § 1101(f)(8) (precluding such finding for "one who has at any time has been convicted of an aggravated felony (as defined in subsection (a)(43)"). According to the judgment entered against Mr. Zazi, he was sentenced to six (6) months of incarceration for his violation of 8 U.S.C. § 1436(a) (0kt. #102 at 25).

1546(a) to Defendant's underlying record of conviction if it first determines that the statute is divisible" (id.)-which, not surprisingly, Mr. Zazi argues it is not.

The Government, on the other hand, appears to argue that a violation of 18 U.S.C. § 1546(a) may be deemed a categorical CIMT,[10] but that even if it is not, because "section 1546(a) *is* a divisible statute," the Court may apply "the modified categorical approach to Defendant's conviction," which allows the Government to look outside the four corners of the statute at Mr. Zazi's judicial records, and "leads to the conclusion that Defendant's conviction for violating section 1546(a) is a CIMT" (Dkt. #34 at 1) (emphasis added). At oral argument, both sides agreed that whether a violation of section 1546(a) is a CIMT depends on whether that statute is divisible.

### 1. Mr. Zazi's Conviction Under Section 1546(a) - CIMT Analysis

The key issue in dispute is whether Mr. Zazi's violation of 18 U.S.C. § 1546(a) constitutes a CIMT. "Whether a conviction constitutes a crime involving moral turpitude is a question of law" for the Court. *Rodriguez-Heredia v. Holder,* 639 F.3d 1264, 1267 (10th Cir. 2011). "Crime involving moral turpitude" is not defined by statute or regulation. *Id.* at 1268. The Tenth Circuit has described moral turpitude as "refer[ing] to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed between man and man, either one's fellow man or society in general." *Id.* According to the *Rodriguez-Heredia* court, "[a]pplying this concept, we have followed Supreme Court precedent making it 'plain that crimes in which fraud was

---

[10] In its reply, the Government asserts Mr. Zazi is "mistaken" in arguing that "violating 18 U.S.C. § 1546(a), is not a categorical CIMT" (Dkt. 34 at 1), but it also recognizes that in *Matter of Serna,* the BIA concluded that possession without use of a fraudulent immigration document is *not* a CIMT *(id.* at 5 n.8).

an ingredient have always been regarded as involving moral turpitude."' *Id.* (quoting *Jordan v. De George,* 341 U.S. 223, 229 (1951)).

With this background as context, the actual analysis to determine whether there is a CIMT in this case involves several steps.

First, I must determine whether a violation of 18 U.S.C. § 1546 is categorically a CIMT (known as the "categorical approach"), which involves determining whether any conviction under it would, necessarily, involve moral turpitude (i.e., the statute covers only morally turpitudinous offenses). If it is, my analysis ends, and I must rule in the Government's favor.

If there is no categorical CIMT, I must then determine whether 18 U.S.C. § 1546(a) is a divisible, as opposed to indivisible, statute. Briefly (and as will be discussed in more detail below), an example of an indivisible statute is one that "sets out a single (or 'indivisible') set of elements to define a single crime," whereas a divisible statute typically is one that has "multiple alternative elements," and thus "a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder." *Mathis v. U.S.,* 136 S. Ct. 2243 , 2249 (2016).

If 18 U.S.C. § 1546 is indivisible (in addition to not being a categorical CIMT), then Mr. Zazi's conviction is not a CIMT because I may not consider anything beyond the statutory language (such as Mr. Zazi's record of conviction), and must assume that Mr. Zazi's conviction was for the least culpable offense addressed by the statute-which is nota CIMT. *See, e.g., Moncrieffe v. Holder,* 569 U.S. 184, 190-91 (2013). But if it is divisible, I may then employ what is known as the "modified categorical approach," which allows me to examine and consider a limited class of additional documents other than just the language of the statute (e.g., the indictment, Mr. Zazi's plea

agreement/transcript and the judgment)to determine whether Mr. Zazi's specific offense is one involving moral turpitude. *Id.*

### a. A Violation of 18 U.S.C. § 1546 is Not Categorically a CIMT

Under the categorical approach ordinarily applied in the Tenth Circuit to determine whether a conviction is a CIMT, a court may "consider only 'the statutory definition of the crime, not the underlying factual circumstances of the crime.'" *Veloz-Luvevano v. Lynch,* 799 F.3d 1308, 1313 (1oth Cir. 2015) (quoting *Rodriguez-Heredia,* 639 F.3d at 1267). If, in evaluating the statutory language, the court concludes that any conviction under it would, necessarily, involve moral turpitude, then the statute constitutes a categorical CIMT, and no further inquiry is required. *Id.* (citing *Ibarra v. Holder,* 736 F.3d 903, 907 (10th Cir. 2013)). *See also United States v. Estrada,* No. CV-15-02238-PHX-SMM, 2018 WL 5993476, *3 (D. Ariz. Oct. 29, 2018) ("Conduct is categorically a crime of moral turpitude, if the 'full range of conduct prohibited by the statute falls within the definition of that term.'") (internal citation omitted).

On the other hand, a statute will not be deemed categorically a CIMT if it reaches any conduct *not* involving moral turpitude. *Id.,* n.5. *See also Flores-Molina v. Sessions,* 850 F.3d 1150, 1169 n.11 (explaining that, if it is possible to violate a statute without engaging in morally turpitudinous conduct, then the statute cannot be a categorical CIMT). If, for example, a priest falsely denies knowledge of his church group's civic conduct in cleaning up a park because the group does not want any public reward or acknowledgement, he may have violated a municipal code provision prohibiting giving false information to a city employee, but his conduct is not morally turpitudinous. *Id.*

In *Veloz-Luvevano,* the court concluded that the Colorado statute criminalizing impersonation,[11] C.R.S. § 18-5-113(1)(d),[12] "constitutes a categorical CIMT because fraud is inherent in the statute," as it "criminaliz[es] 'fraudulent impersonation,"' and "falls in Colorado's criminal code under 'Offenses Involving Fraud."' 799 F.3d at 1313-14. As a result, the Tenth Circuit held that the petitioner in *Veloz-Luvevano ,* a Mexican citizen who after his legal six-month visitor visa to the U.S. had expired, purchased and possessed a forged social security card so he could work illegally in the U.S., was ineligible for cancellation of removal under 8 U.S.C. § 1182(a)(2)(A) ("any alien convicted of . . . a [CIMT] is inadmissible").

Recently, the Tenth Circuit also addressed when, specifically, violating an INA (Immigration and Nationality Act) provision constitutes a categorical CIMT. *Afamasaga v. Sessions,* 884 F.3d 1286 (10th Cir. 2018). The petitioner in *Afamasaga,* a Samoan citizen, had falsely claimed in an application for an American passport that he had been born in American Samoa (which, if true, would have made him an American citizen). As a result, he was convicted under 18 U.S.C. § 1542, which prohibits willfully and knowingly making any false statement when applying for an American passport. And because his conviction was found to constitute a CIMT, he was deemed ineligible for cancellation of his removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(i)).

_____

[11] The third paragraph under 18 U.S.C. § 1546(a) similarly criminalizes impersonation in the context of applying for or assisting another in applying for an immigration benefit.

[12] Under C.R.S. § 18-5-113(1)(d), "A person commits criminal impersonation if he knowingly assumes a false or fictitious identity or capacity, and in such identity or capacity he ...   (d) Does an act which if done by the person falsely impersonated, might subject such person to an action or special proceeding, civil or criminal, or to liability, charge, forfeiture, or penalty."

Describing how the categorical approach should be applied in determining whether a CIMT is at issue, the *Afamasaga* court noted "it is not enough that [the] actual conduct would qualify. Instead, we ... 'compare the statutory definition of [the] offense with the generic definition of CIMT and consider whether the minimum conduct that would satisfy the former would necessarily satisfy the latter."' *Id.* at 1289 (quoting *Flores-Molina,* 850 F.3d at 1158). In that case, therefore, "if all conduct prohibited by § 1542 involves moral turpitude," then the petitioner's offense would, in turn, qualify as a categorical CIMT. *Id.*

Observing that "the INA does not define *crime involving moral turpitude,"* the *Afamasaga* court noted it previously had "said that the term 'refers to conduct which is inherently base, vile, or depraved, [or] contrary to the accepted rules of morality."' *Id.* (quoting *Efagene v. Holder,* 642 F.3d 918,921 (10th Cir. 2011) (emphasis in original) (internal quotations omitted)). And, it stated that although "crimes in which fraud is an ingredient are regarded as involving moral turpitude ... [f]raud need not be an explicit element of the offense." *Id. See also Matter of Flores,* 17 I. & N. Dec. 225, 228 (BIA 1'980) ("[I]t is not necessary that the statute prohibiting [the conduct in question] include the usual phraseology concerning fraud in order for it to involve a crime of moral turpitude.").

In this regard, "the BIA has identified three categories of deceit-related offenses that qualify as CIMTs: (1) offenses containing an explicit fraudulent intent element; (2) offenses containing an inherent fraudulent intent element; and (3) offenses containing a specific intent element." *Afamasaga,* 884 F.3d at 1289 (quoting *Flores-Molina,* 850 F.3d at 1159). The *Afamasaga* court further stressed that "an offense [is] implicitly fraudulent-and thus, a CIMT-where it involve[s] impairing or obstructing an important

18

function ...   of the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means." *Id. See also Ghani v. Holder,* 557 F.3d 836, 840-41 (7th Cir. 2009) ("almost all courts have held that intentionally deceiving the government involves moral turpitude.")

The *Afamasaga* court ultimately held that an offense under 8 U.S.C. § 1542 "is categorically a CIMT" because "it certainly involves deceit and an intent to impair the efficiency and lawful functioning of the government," which "alone is sufficient to categorize a crime as a CIMT." *Afamasaga,* 884 F.3d at 1290 (citing *Rodriguez v. Gonzales,* 451 F.3d 60, 63-64 (2d Cir. 2006) (holding 8 U.S.C. § 1542 is a categorical CIMT even though it doesn't contain every element of common law fraud)). In so ruling, it relied on a United States Supreme Court decision "equating 'a passport . . . secured by reason of a false statement' to 'a passport secured by fraud,'" *Browder v. United States,* 312 U.S. 335,337 (1941), as well as a similar "precedential opinion of the BIA [which) held that a conviction for making false statements to obtain a passport in another person's name is a CIMT because '[c)onvictions for making false statements have been found to involve moral turpitude.'" *Id.* (citing *Matter of Correa-Garces,* 20 I. & N. Dec. 451,454 (BIA 1992)).

Numerous other decisions, both by the BIA and federal courts (including the U.S. Supreme Court), are consistent with the court's ruling in *Afamasaga,* and most underscore the inherently fraudulent nature of making false statements to or trying to deceive the government.[13]

---

[13] *See, e.g., Jordan,* 341 U.S. at 229 (defrauding the U.S. of taxes on distilled spirits is a CIMT); *Marin-Gonzales v. Sessions,* 720 F.App'x 496 (1oth Cir. 2018) (conviction for attempted public-assistance fraud under state law found to categorically be a CIMT); *Lagunas-Salgado v. Holder,* 584 F.3d 707, 712 (7th Cir. 2009) (selling fraudulent

Which brings me to the statute at issue, 18 U.S.C. § 1546(a), entitled "Fraud and misuse of visas, permits, and other documents." As noted above, the starting point of my analysis is the statutory language, which provides as follows:

(a) Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained; or

Whoever, except under direction of the Attorney General or the Commissioner of the Immigration and Naturalization Service, or other proper officer, knowingly possesses any blank permit, or engraves, sells, brings into the United States, or has in his control or possession any plate in the likeness of a plate designed for the printing of permits, or makes any print, photograph, or impression in the likeness of any immigrant or nonimmigrant visa, permit or other document required for entry into the United States, or has in his possession a distinctive paper which has been adopted by the Attorney General or the Commissioner of the Immigration and Naturalization Service for the printing of such visas, permits, or documents; or

---

immigration documents to illegal aliens is morally turpitudinous because it "involves inherently deceptive conduct."); *United States v. George,* 386 F.3d 383, 394-95 (2d Cir. 2004) (knowingly submitting false information in a passport application is a CIMT because doing so is "not innocent behavior," and "a reasonable person knowingly making false statements in a passport application should be on notice that he or she is likely not engaging in lawful conduct."); *Bisaillon v. Hogan,* 257 F.2d 435, 438 (9th Cir.), *cert. denied sub nom. Bisaillon v. Sureck,* 358 U.S. 872 (1958) (an offense under section 1542 is a CIMT because although it does not necessarily require fraud, it is akin to perjury and requires an intent to induce the government to issue a passport on the basis of a false and fraudulent statement); *Matter of Flores,* 17 I. & N. Dec. 225, 229 (BIA 1980) ("[T]he sale of counterfeit documents relating to alien registry impairs the lawful procedures of the Immigration and Naturalization Service and thwarts its lawful purpose of requiring aliens to have proper documentation to enter the United States."); *Matter of R-,* 5 I. & N. Dec. 29, 37 (BIA 1952) (making a false statement to avoid military service is a CIMT).

Whoever, when applying for an immigrant or nonimmigrant visa, permit, or other document required for entry into the United States, or for admission to the United States personates another, or falsely appears in the name of a deceased individual, or evades or attempts to evade the immigration laws by appearing under an assumed or fictitious name without disclosing his true identity, or sells or otherwise disposes of, or offers to sell or otherwise dispose of, or utters, such visa, permit, or other document, to any person not authorized by law to receive such document; or

Whoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact--

Shall be fined under this title or imprisoned not more than 25 years (if the offense was committed to facilitate an act of international terrorism (as defined in section 2331 of this title)), 20 years (if the offense was committed to facilitate a drug trafficking crime (as defined in section 929(a) of this title)), 10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime), or 15 years (in the case of any other offense), or both.

18 U.S.C.. § 1546(a).

Although "the BIA could have chosen to classify all of this conduct as involving moral turpitude, given that fraud inheres in each," it instead "has taken a consistent position that benefits aliens: The analytically distinct and lesser offenses do not constitute crimes of moral turpitude." *Omagah v. Ashcroft,* 288 F.3d 254, 261 (5th Cir. 2002). Specifically, the BIA has determined that under § 1546(a), "the crime of possession of an altered immigration document with knowledge that it was altered, but without its use or proof of any intent to use it unlawfully, is not a crime involving moral turpitude." *In re Serna,* 20 I. & N. Dec. 579, 586 (BIA 1992). The BIA reasoned that "[c]ircumstances may exist under which the respondent might not have had the intent to use the altered immigration document in his possession unlawfully," and it took great

21

pains to differentiate between knowingly possessing a forged immigration document without intent to use it, with other crimes such as knowingly possessing stolen goods, where criminal intent may be inferred. *Id.* at 585 n.10.

Courts in other circuits have relied on *Serna* to conclude that a violation of 18 U.S.C. § 1546 "is not a crime involving moral turpitude as a categorical matter." *Hoo Yun Lee v. Holder,* 513 F. App'x 683, 684 n.4 (9th Cir. 2013). *See also Benitez-Field v. Sessions,* No. CV 13-31-M-DLC, 2017 WL 1034785, at *7 (D. Mont. Mar. 16, 2017) ("Mere possession of an alien registration receipt card, 'without its use or proof of any intent to use it unlawfully, is not a conviction for a crime involving moral turpitude.'"). Based on the above authority, and the Court's review of 18 U.S.C. § 1546(a), I agree that because the statute arguably encompasses and criminalizes conduct that may not necessarily be morally turpitudinous-specifically, mere possession of an altered immigration document without any intent to use it-a conviction under it is not categorically a CIMT.

But this does not end my inquiry. The critical and, indeed, case determinative analysis involves whether 18 U.S.C. § 1546(a) is a divisible statute, which would allow me to consider other documents involved in Mr. Zazi's conviction to determine whether he committed a CIMT. I conclude the statute is divisible.

b. 18 U.S.C. § 1546(a) is a Divisible Statute

The United States Supreme Court's decisions in *Descamps v. United States,* 133 S. Ct. 2276 (2013) and *Mathis v. U.S.,* 136 S. Ct. 2243 (2016), govern the concept of divisibility, and the corresponding use of the modified categorical approach. Pursuant to this authority, "a court must make the threshold determination that a statute is divisible before applying the modified categorical approach." *United States v. Pam,* 867 F.3d

1191, 1204 (10th Cir. 2017). As previously noted, an indivisible statute typically comprises only one set of elements, even if they are framed in the disjunctive, while a divisible statute "sets out one or more elements of the offense in the alternative," and "thereby define[s] multiple crimes." *Id.* "To be considered divisible, 'the statutory phrases listed in the alternative must be elements, not means,"' and the term "elements" refers to "the 'constituent parts' of a crime's legal definition- the things the 'prosecution must prove to sustain a conviction."' *Id.* (internal citations omitted). "Means," on the other hand, "are 'various factual ways of committing some component of the offense." *Id.*

Where, for example, "statutory alternatives carry different punishments, then[] they must be elements. Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* (internal citations omitted). The statute at issue in *Pam,* for example, which involved shooting at or from a motor vehicle, was found to be indivisible because it set forth separate elements for when this crime constitutes a second, third or fourth-degree felony. *Id.* at 1205 (addressing N.M. Stat. Ann.§ 30-3-8(8) and concluding "it lists alternative elements that create three separate crimes"). A statute "that enumerates various factual means of committing a single element," such as one that "requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify," is, on the other hand, indivisible because it "specifies diverse means of satisfying a single element of a single crime- or otherwise said, spells out various factual ways of committing some component of the offense-a jury need not find (or a defendant admit) any particular item" or weapon was used. *Mathis,* 136 S. Ct. at 2249.

According to Mr. Zazi, 18 U.S.C. § 1546(a) merely "lists different means of accomplishing a crime within the text of the statute" and, therefore, should not be found divisible (0kt. #31at 8). He also asserts that "the government does not argue that a jury would have had to unanimously agree that he had been convicted under a set of elements in 18 U.S.C. § 1546(a) which would constitute a CIMT rather than a set of elements sufficient for conviction like those in *Matter of* Serna, which would not" *(id.* at 9). The Court disagrees.

Recently, at least one court, as well as the U.S. CIS's Administrative Appeals Office (AAO), have expressly concluded that 18 U.S.C. § 1546(a) is divisible. See *Benitez-Field v. Sessions,* No. CV 13-31-M-DLC, 2017 WL 1034785, *7 (D. Mont. March 16, 2017) (finding 18 U.S.C. § 1546 is a divisible statute, and affirming the AAO's "appli[cation] [of] a 'modified categorical approach'"); *Matter of L-K-8-F-,* 2016 WL 7191105 at *6 (AAO Nov. 16, 2016) (unpublished) ("Section 1546 is [d]ivisible and [t]hus [w]arrants the [mJodified [c]ategorical [aJpproach "). As the AAO elaborated in *L-K-8-F-,* "all the actions listed under subsection (a) [of section 1546] . . . are elements and not means of committing the crime because the prosecution cannot charge the defendant with the statute as a whole in order to obtain a conviction but must, as here, select individual elements from those enumerated in subsection (a)." *Id.* It went on to reason "[t]his makes sense, as subsection (a) covers a long list of quite disparate conduct, from merely possessing a fraudulent alien registration receipt card knowing it to be false to using, or forging, altering, or counterfeiting it." *Id.* As a result, the AAO, "under the analytical framework discussed in *Mathis* . . . reaffirm[ed] [its} decision on appeal that section 1546 as a whole is divisible" and, in addition, made the "alternative finding that subsection (a) by itself is also divisible." *Id.*

Several other courts implicitly have found section 1546(a) to be divisible by applying the modified categorical approach to it, and concluding the offense at issue constituted a CIMT. *See, e.g., U.S. v. Romero-Ramirez,* No. 14-C-0522, 2015 WL 4492352, *2-4 (E.D. Wis. July 23, 2015) (conviction under section 1546(a) for submitting a "False Application for Naturalization" constitutes a CIMT); *Marin-Rodriguez v. Holder,* 710 F.3d 734, 738-39 (7th Cir. 2013) (affirming decision that applied modified categorical approach to conclude that using a fraudulent Social Security card to obtain employment in violation of section 1546(a) is a CIMT); *Hoo Yun Lee,* 513 F. App'x at 684 (applying modified categorical approach to conclude visa fraud under 18 U.S.C. § 1546(a)- specifically, knowingly using a false and fraudulent R-1 visa to obtain a social security card- is a crime involving moral turpitude); *Crocock v. Holder,* 670 F.3d 400, 402 (2d Cir. 2012) ("making a false attestation on an Employment Verification System Form in violation of 18 U.S.C. § 1546(a) and (b)" is "a crime involving moral turpitude"); *Omagah,* 288 F.3d at 261 (affirming BIA's decision that conspiracy to possess and use documents in violation of section 1546 constitutes a CIMT).

The Court has not found *any* decision- by any court, the BIA, or the AAO- holding that 18 U.S.C. § 1546(a) is *not* divisible. And the Court further finds compelling and agrees both with the AAO's analysis in *Matter of L-K-8-F-,* and the Government's description of section 1546(a) as comprising "four distinct sections, each written in the disjunctive, with multiple alternative elements listed within each of these four sections that are in turn written in the disjunctive" (0kt. #34 at 5 n.8). Indeed, section 1546(a) falls neatly within the sorts of divisible statutes described by the United States Supreme Court in both *Mathis,* 136 S. Ct. at 2249 (e.g., statutes "hav[ing] a more complicated . . . structure," "list[ing] elements in the alternative and thereby defin[ing] multiple crimes"),

and *Descamps,* 570 U.S. at 262-63 (e.g., a statute that "comprises multiple, alternative versions of the crime," or "refer[s] to several different crimes").

In sum, 18 U.S.C. § 1546(a) is the epitome of a statute that sets forth multiple discrete offenses.

The first paragraph within section 1546(a) describes crimes involving forging, counterfeiting, altering, or falsely making any immigration document, as well as possessing any such document knowing it to be false. It is this particular paragraph that has been viewed as encompassing an offense *not* involving moral turpitude, i.e. possessing, but without any intent to actually use, a forged or false immigration document. *See, e.g., Serna,* 20 I. & N. Dec. at 586 and n.10 (reasoning that "in the case of an altered document, the Government has not been harmed until a person actually uses it or intends to use it for fraudulent or deceitful purposes.").

The second paragraph addresses the knowing possession of a blank permit, or plate designed for the printing of such permit, as well as engraving, selling, or bringing in to the United States such a plate, making any print, photo, etc. in the likeness of an immigration document, or possessing "a distinctive paper ... adopted by the Attorney General or" INS Commissioner for the printing of such documents.

The third paragraph covers falsely impersonating another, falsely appearing as a deceased individual, evading or attempting to evade immigration laws by assuming under an assumed or fictitious name, and related offenses-all of which presumably would be CIMTs. *Cf. Veloz-Luvevano,* 799 F.3d at 1313-14 (Colorado statute criminalizing impersonation found to be a categorical CIMT).

And, finally, the fourth paragraph, which is the one, according to the Government, at issue in this case, criminalizes "knowingly making under oath," or "subscrib[ing] as

26

true," "any false statement with respect to a material fact in any application" or other immigration document, as well as "knowingly presenting such" document that contains a false statement or "fails to contain any reasonable basis in law or fact" which, based on all of the above-cited authority, presumably also would qualify as CIMTs.

Based on my review of the statutory language, and guided by precedent addressing when a statute should be deemed divisible as opposed to divisible, I conclude as a matter of law that 18 U.S.C. § 1546(a) is divisible.

c. <u>Mr. Zazi's conviction under 18 U.S.C. § 1546 constituted a CIMT</u>

Based on my conclusion that 18 U.S.C. § 1546(a) is a divisible statute, I may now engage in a modified categorical approach by further reviewing limited documents from the judicial record including, for example, Mr. Zazi's indictment, and the transcript containing his guilty plea, to determine whether his particular conviction under 18 U.S.C. § 1546(a) constitutes a CIMT. *See, e.g., Marin-Rodriguez,* 710 F.3d at 738-39 (under modified categorical approach, and based on his record of conviction, including his guilty plea, petitioner's conviction under section 1546(a) constituted a CIMT).

Here, not only does the indictment specifically assert that Mr. Zazi caused to be filed an 1-130 Petition that falsely stated his nephew was his biological child,[14] he expressly admitted to doing so during the hearing on his plea agreement before the Honorable John Gleeson of the Eastern District of New York. In pleading guilty to having violated section 1546(a) by knowingly making a false statement on the 1-1 30 peti tion relating to his nephew, Mr. Zazi admitted that he "instructed [his] attorney to falsely tell the Immigration authorities that Amanullah was [his] biological son," and he

_____

[14] The indictment also asserted he had caused to be issued a Refugee/Asylee Relative Petition that similarly falsely stated his nephew was his biological child (0kt. 1-2,i 2).

did so despite knowing this was false (0kt. 1-2 at 20). Thus here, as in *Marin-Rodriguez,* Mr. Zazi's false statements were "directly deceptive" since he presented the false 1-130 petition to the government with the intent to deceive the government into thinking that his nephew was his biological son and thus was entitled to certain immigration benefits.

Based on this testimony, I conclude that Mr. Zazi's conviction under 18 U.S.C. § 1546(a) was for a CIMT, that he committed this CIMT during the statutory period in which he was required to demonstrate good moral character, and that, as a result, I must grant the Government's Rule 12(c) motion to revoke Mr. Zazi's naturalization.

### 8. The Government's Remaining Arguments - Counts Three and Four

The Government makes two additional, alternative arguments as to why Mr. Zazi's naturalization mustbe revoked pursuant to 8 U.S.C. § 1451(a).

First, it argues that, pursuant to 8 C.F.R. § 316.10(b)(3)(iii), Mr. Zazi "[c]ommitted [an] unlawful act[] [during the statutory period] that adversely reflect[s] upon [his] moral character," that Mr. Zazi has not (and cannot) "establish[] extenuating circumstances" that otherwise might "palliate or lessen" his guilt in relation to such unlawful act,[15] and that, as a result, he must "be found to [have] lack[ed] good moral character," which "rendered him statutorily ineligible to naturalize" (0kt. #29 at 7; Dkt. #1, Count Three).

Second, the Government argues that "during the naturalization process, [Mr. Zazi] willfully misrepresented and concealed material facts concerning his criminal conduct," further requiring revocation of his naturalization pursuant to 8 U.S.C. 1451(a) (0kt. #29

---

[15] *See United States v. Suarez,* 664 F.3d 655, 662 (7th Cir. 2011) ("Extenuating circumstances are those which render a crime less reprehensible than it otherwise would be, or 'tend to palliate or lessen its guilt.'").

at 7, 14-19; Dkt. #1, Count Four). Specifically, the Government asserts Mr. Zazi willfully misrepresented on his naturalization application that he had never committed a crime or offense for which he had not been arrested *(id.* at 15; Dkt. #1-6 at 9 Part 10.D.15).

Because I conclude as a matter of law that Mr. Zazi committed a CIMT during the requisite statutory "good moral character" period, rendering him ineligible for naturalization pursuant to 8 U.S.C. § 1182((a)(2)(A)(I), and resulting in his having procured his citizenship illegally, I am required to rule in the Government's favor on Count One pursuant to 8 U.S.C. § 1451(a). Therefore, I need not reach and do not address the Government's two other arguments for revoking Mr. Zazi's naturalization, Count Three and Count Four (as previously noted, the Government's motion does not address Count One).

## IV.    Order

It is hereby ORDERED that judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is GRANTED in favor of the Government on Count Two of its Complaint.

It is further ORDERED that judgment of denaturalization shall be entered revoking and setting aside Mr. Zazi's naturalization, and cancelling his Certificate of Naturalization No. 29824582, issued to Mr. Zazi on October 23, 2007, and forever restraining and enjoining Mr. Zazi from claiming any rights, privileges, or advantages under any document that evidences the United States citizenship he obtained as a result of his October 23, 2007 naturalization.

It is further ORDERED that Mr. Zazi shall, within seven (7) days of this ORDER, surrender and deliver his Certificate of Naturalization No. 29824582, and any other indicia of United States Citizenship, including, but not limited to, United States

passports, voter registration cards, and other voting documents, and any copies thereof in his possession to the Attorney General through counsel for the Government as its designated representative. Mr. Zazi is also directed to recover any of these documents, or copies of them, that are in the possession of others and to surrender and deliver them to the Attorney General through counsel for the Government as its designated representative.

It is further ORDERED that the Government shall notify the Court on or before December 14, 2018, whether the Government seeks further relief in relation to its remaining counts (One, Three, and Four), or these counts may be dismissed and judgment entered accordingly.

Dated: November 30, 2018

N. Reid Neureiter
United States Magistrate Judge